**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION**

| | |
|---|---|
| PRINCIPLE OUTDOOR, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    No. _____ |
| | ) |
| CITY OF NEWNAN, GEORGIA, | ) |
| | ) |
| Defendant. | ) |

**COMPLAINT**

Plaintiff Principle Outdoor, LLC ("Principle") has been denied the ability to post signs in the City of Newnan, Georgia ("City"). It brings this case in order to stop the City from continuing to squelch free speech in an unconstitutional and improper manner.

**NATURE OF THE CASE**

1.

This action seeks declaratory and injunctive relief and monetary damages based on the City's improper conduct to the detriment of Plaintiff's – and others' – free speech rights.

2.

Principle is a sign company owned by two Georgia citizens. It works to place signs where they are desperately needed by local businesses, organizations, churches, and nonprofits.

3.

One area of interest to Principle is Newnan because the City is underserved by signs that can be used by these local organizations.

4.

After scouring the City, Principle found several sites where signs were allowed pursuant to the City's code. Principle reached agreement with the property owners (two railroad companies) and prepared extensive documentation to submit to the City. Although City permits were not needed for the signs in accordance with the City code, Principle needed forms signed for the State Department of Transportation ("GDOT"). Principle also wanted to clear with the City that the signs were allowed, since they are a major capital cost.

5.

Principle applied to the City and its applications were rejected on discretionary and obviously inapplicable grounds.

6.

Upon legal review, the City's codes and conduct are invalid in multiple independent respects and the signs should be allowed to be posted.

## PARTIES

7.

Principle is a Georgia limited liability company owned by two Georgia citizens and residents.  The owners of Principle have been the sign business for many years and have a track record of installing useful and attractive signs in various Georgia markets.

8.

The City of Newnan is a political subdivision of the State of Georgia. Service on the City may be perfected via service on the Mayor Keith Brady at City Hall, 25 LaGrange Street, Newnan, Georgia 30263.

## JURISDICTION AND VENUE

9.

This case raises constitutional claims under the United States Constitution and the First, Fifth, and Fourteenth Amendments thereto.  Pursuant to 42 U.S.C. § 1983, violations of fundamental rights are actionable and compensable.  Such claims are based on federal law and may proceed in federal court.  The Georgia

Constitution also protects these liberties, in some cases even more stridently than the United States Constitution.   Such state constitutional claims are, however, appropriately raised in federal court as part of the Court's supplemental or pendent jurisdiction.

10.

The City of Newnan is located in Coweta County, which is included in this District.  The Northern District is the appropriate venue.

**FACTUAL ALLEGATIONS**

A.      <u>Submission of the Sign Application Packages.</u>

11.

On January 13, 2023, Principle submitted ten sign applications to the City. Each package included all information and documentation required by the City code.  Some signs were to be traditional static signs, others were proposed to use modern electronic LED displays.  The State of Georgia and GDOT have adopted laws and regulations for advertising signs on all major roads.  In each instance, Principle's proposed signs were fully compliant with State law and regulation.

4

12.

All of the applications were rejected as incomplete in a letter dated January 13, 2023 for the stated reason that "each application lacks the first require [sic] submission document, which is a survey, to scale, of the proposed sign location."

13.

Principle showed the City via an email that the City code did not require a survey to be submitted with sign applications. Indeed, it is crystal clear that no survey is required. The City's own records will show conclusively that sign permits are often issued without a survey having been submitted.

14.

In response to Principle's showing that no survey was required, the City issued a second letter on January 20, 2023. This letter offered:

> I would point out that Section 8-25(c)(3) specifically states that the Building Official can request any other information that the Building Official may require to ensure compliance with the Article or in exercise of sound discretion in acting upon the application.

15.

Thus, the City concedes that the applications were deemed incomplete based only on the discretion of City staff.

16.

Realizing that the initial basis for rejecting the applications was not lawful, the January 20 letter also offered a second basis for why the signs could not be permitted, namely Section 2-9(a) which states:

> Where areas appear to be unclassified on the Official Zoning Map and classification cannot be determined by the provisions of this Ordinance, such areas shall be considered to be classified as RS-20 until action is taken to amend the Official Zoning Map.

The City stated that the sign locations were on railroad property that "appears to be 'unclassified.'"  Whereas the City Zoning Map clearly shows all of the properties to be unzoned, and indeed it has never been zoned, the City "grasped at straws" to find another basis to defeat Principle's signs.  The letter continued: "Please note that a changeable copy – variable message sign would not be permitted in an RS-20 zoning designation . . . ."  The RS-20 zone is for single-family residences.  The proposed sites could not be more different than single-family residences; indeed, they are on the same property as massive commercial railroad operations with numerous interstate trains passing each day.  The noise, fumes, and disruption of a major freight railway is not akin to residential use.

17.

The second basis for rejecting the applications was tantamount to a denial of the applications.  The "unclassified" issue has nothing to do with the application materials submitted.  Nevertheless, the City did not deny the applications because it hoped to have time to update the City code to lawfully prevent the signs before it deemed the applications to be formally submitted.

18.

Pursuant the City code, applications that the City refuses to process and grant or deny are not permitted to seek administrative appeals.  Only denials may be appealed pursuant to the code.  Due to the free speech implications of this state of affairs – whereby City officials are granted unbounded discretion over sign applications and signs are banned on the several miles of railroad property in the City – Principle and the citizens and organizations of Newnan cannot wait for the City to remedy its own conduct.  The loss of free speech activity for even one day is irreparable.  In this instance, Principle's signs would be the only signs in huge swaths of the City capable of conveying many critical messages, such as Amber Alerts, weather alerts from GDOT, emergency announcements from the Georgia Emergency Managements Agency ("GEMA"), fugitive alerts from the Georgia

Bureau of Investigation ("GBI") and Federal Bureau of Investigation ("FBI"), and other public safety messages.

19.

Thus, Principle is permitted to seek the assistance of the federal courts to bring an end to improper deprivation of speech activity.

**REQUEST FOR RELIEF**

**COUNT ONE**

**VIOLATION OF FIRST AMENDMENT AND FREE SPEECH RIGHTS**

20.

Plaintiff repeats paragraphs 1 through 19 above.

21.

The City's refusal to issue sign permits in a timely manner was unconstitutional in violation of the First Amendment, Fifth Amendment, and Fourteenth Amendment to the United States Constitution and the equivalent provisions of the Georgia Constitution.

**A.  <u>Undue Discretion.</u>**

22.

In asserting the first basis of denial – Principle's refusal to submit a survey – the City relies upon a plainly unconstitutional portion of its code.

23.

The City Zoning Code sets out the specific elements that must be included with sign applications.   Section 8-25(b) and (c) of the Zoning Code state as follows:

> (b) An application for a sign permit for a permanent or temporary sign must include the following:
>
> (1) The type and description of the sign.
> (2) The street address of the property upon which the sign is to be located and the proposed location of such sign on such property. In the absence of a street address, a method of location acceptable to the Building Official shall be used.
> (3) The name and address of the owner of the real property upon which the sign is to be located.
> (4) Written consent of the owner or his agent of the real property upon which the sign is to be located granting permission for the placement or maintenance of such sign.
> (5) Name, address, phone number and business license number of the sign contractor, if applicable; otherwise, the name, address and phone number of the person responsible for placement of the sign.

(6) If applicable, a copy of a "determination of no hazard to air navigation" approved by the Federal Aviation Administration (FAA).

(c) Sign permit applications for a permanent sign shall be accompanied by a dimensioned scale drawing of each proposed sign: a site plan and elevation for freestanding signs, or a drawing of the facade of the building showing proposed placement of each building sign. The drawing must include:

(1) The square foot area of each sign face and the height of the sign structure.
(2) Pertinent information such as wind pressure requirements and display materials in accordance with the city's Building Code; and
(3) Any other information that the Building Official may require to ensure compliance with this Article or in the exercise of sound discretion in acting upon the application.

24.

Principle unquestionably met all of these requirements by completing all such items for each of its applications.

25.

The City has conceded that it utilized the discretion found Section 8-25(c)(3) to require Principle to submit a survey, even though only a site plan to scale is required by the code.

10

26.

Section 8-25(c)(3) provides that City officials "may" or may not use their discretion to require "any other information" that they can dream up.  There are absolutely no standards to guide either instance of discretion.  Sign applicants are truly at the whim of City officials.

27.

Section 8-25(c)(3) further acknowledges that City officials have such discretion by stating that they are to exercise "sound discretion."

28.

The Eleventh Circuit, this Court, and all federal and state courts have often invalidated such discretionary provisions when they are included in the application process for any speech activity, such as posting signs, holding protests, or operating strip clubs.  Cities simply cannot subject speech permitting to discretionary application provisions.

29.

Because this aspect of the City's code and conduct is unconstitutional, the Court should declare it invalid and enjoin the City from the use of such discretion in sign permitting.  Moreover, the City should be ordered to issue permits for – or otherwise allow – Principle's requested signs.

30.

In addition, pursuant to 42 U.S.C. § 1983, Plaintiff is entitled to compensation for the damages it has suffered as a result of the City's unconstitutional code and conduct and, pursuant to 42 U.S.C. § 1988, reimbursement for all reasonable costs, including attorneys' fees, of bringing this lawsuit to assert its and others' constitutional rights.

**B. "Unclassified" Areas.**

31.

The City's second basis for rejecting the applications – that they are in "unclassified" areas on the City Zoning Map – is also unduly discretionary and impermissible. It is also provably wrong and has been offered merely as a pretext to further delay Principle's signs.

32.

Several miles of railroad property in the City are plainly not zoned on the City's official Zoning Map. Georgia law is clear that the official Zoning Map is equivalent to a written code; it is a binding and enforceable document. Property cannot be zoned without compliance with numerous procedural requirements, such as published notices and public hearings. That has never happened with regard to

the railroad properties in Newnan.  This is not unusual for rail properties but is common among cities in Georgia and elsewhere.

33.

The City is aware of the clear law in Georgia that the owner of property has the right to use their property in any lawful manner.  Unzoned property is not constrained by a local zoning code, this rule has been recognized by Georgia courts – including Georgia's Supreme Court – many times over a span of decades.  Even when there is ambiguity – which does not exist in this case – Georgia law requires that the proposed use be allowed.

34.

Here, the railroad property is unzoned and thus not restricted by any applicable zoning regulations.  Although the rail property has been inside the City limits for decades, the City has chosen not to zone the property.  As such, the railroad has never had any opportunity to appear before the City Council to show the City what zoning and land use restrictions would be appropriate for the railroad property.  Thus, any zoning restrictions that the City would attempt to enforce are invalid and void.  Because the City's official Zoning Map unambiguously shows that the railroad property has not been zoned, the requested signs must be allowed.

35.

To any extent City staff are empowered to deny signs on property they deem "unclassified," despite the clarity of the official Zoning Map, such discretion cannot be allowed in the realm of sign permitting.

36.

Because this aspect of the City's code and conduct is unconstitutional, the Court should declare it invalid and enjoin the City from the use of such discretion in sign permitting.  Moreover, the City should be ordered to issue permits for – or otherwise allow – Principle's requested signs.

37.

In addition, pursuant to 42 U.S.C. § 1983, Plaintiff is entitled to compensation for the damages it has suffered as a result of the City's unconstitutional code and conduct and, pursuant to 42 U.S.C. § 1988, reimbursement for all reasonable costs, including attorneys' fees, of bringing this lawsuit to assert its and others' constitutional rights.

**C.  The City's Ban on All Signs Not Specifically Allowed.**

38.

Another fatal defect in the City code is that it reverses the permissible mechanism for restricting signs.  The federal and state constitutions require that

cities consider their legitimate purposes for restricting signs and then draw up regulations that meet those needs, and go no farther to limit speech activity. The City has taken the opposite tack and banned all signs other than those allowed by the City.

39.

The City frankly admits to its unconstitutional conduct. In Section 8-2 of the City code, dealing with the "Applicability and Effect" of the City's sign restrictions, the City states:

> (a) A sign may be erected, placed, established, painted, created, or maintained in the city only in conformance with the standards, procedures, exemptions, and other requirements of this Article.

> (b) The effect of this Article as more specifically set forth herein, is:
> . . .

> ### *(7) To prohibit all signs not expressly allowed by this Article*

(emphasis added). The City thus proudly announces its intent to defy well-established constitutional norms.

40.

Further, pursuant to Section 8-11 of the City code:

Sec. 8-11. - Signs Prohibited under this Article. ***All signs not expressly allowed under this Article or are exempt from regulation in accordance with the previous Section are prohibited*** in the city. Such signs include:

15

. . .

(v) ***All signs not specifically allowed by this Article.***

(emphasis added).  Therefore, in no less than three separate provisions, the City has proclaimed its intention to ban all signs not specifically permitted, a category that includes Principle's requested signs.

41.

This type of regulation is the "antithesis" of the First Amendment and is unconstitutional.  The Georgia Supreme Court unanimously held in *Fulton County v. Galberaith*, 282 Ga. 314 (2007), that such provisions are illegal in Georgia.  The Supreme Court stated: "Banning all signs . . . and then deciding on a case-by-case basis which ones will be permitted is the antithesis of the narrow tailoring that is required under the First Amendment" and struck down the Fulton County sign ordinance as a result of this deficiency.  *Id.* at   318-19.  The Supreme Court, in another unanimous decision, clarified that this deficiency was enough to invalidate the entire Fulton County sign ordinance.  *Fulton County v. Action Outdoor Adver. Co., JV*, 289 Ga. 347, 348-49 (2011).  Based on the clear and unanimous rulings of the Supreme Court in the *Fulton County* case, the Newnan sign regulations cannot survive.   In the *Fulton County* case, the government was ultimately ordered to

issue all permits and millions of dollars in damages and legal fees were awarded to the plaintiffs.

42.

Because this aspect of the City's code and conduct is unconstitutional, the Court should declare it invalid and enjoin the City from the use of such discretion in sign permitting.  Moreover, the City should be ordered to issue permits for – or otherwise allow – Principle's requested signs.

43.

In addition, pursuant to 42 U.S.C. § 1983, Plaintiff is entitled to compensation for the damages it has suffered as a result of the City's unconstitutional code and conduct and, pursuant to 42 U.S.C. § 1988, reimbursement for all reasonable costs, including attorneys' fees, of bringing this lawsuit to assert its and others' constitutional rights.

## **COUNT TWO**

## **GEORGIA STATUTORY VIOLATIONS**

44.

Plaintiff repeats paragraphs 1 through 19 above.

45.

The City code governing signs was not enacted in accordance with Georgia's

Zoning Procedures Law.   Georgia's Zoning Procedures Law ("ZPL") includes

O.C.G.A. § 36-66-5(a) which states:

> Local governments **shall** adopt **policies and procedures which govern calling and conducting hearings required by Code Section 36-66-4**, and printed copies of such policies and procedures shall be available for distribution to the general public.  Such policies and procedures shall specify a minimum time period at hearings on proposed zoning decisions for presentation of data, evidence, and opinion by proponents of each zoning decision and an equal minimum time period for presentation by opponents of each proposed zoning decision, such minimum time period to be no less than ten minutes per side.

(emphasis added).  Pursuant to this provision, the City was required to adopt valid

zoning policies and procedures **before** it took action on the Zoning Code (which

includes the sign restrictions) and the Zoning Map.

46.

The City has failed to adopt policies and procedures pursuant to O.C.G.A. §

36-66-5(a) and, therefore, the City could not properly adopt the sign restrictions.

*See* Frank E. Jenkins, III, *Proper Adoption of the Zoning Ordinance and Map, and*

*Potential Challenges*, Chap. 8, p. 2, Zoning Seminar, ICLE in Georgia (local

government shall adopt at a duly advertised public hearing its own policies and procedures before calling and conducting zoning hearings or passing zoning codes).

47.

Georgia law also explicitly requires city governments to properly advertise and then hold a public hearing prior to the adoption of land use ordinances and land use approval procedures.  *See* O.C.G.A. § 36-66-4(a); *also* § 36-66-2(a) (noting that the purpose of the ZPL is to afford the general public due process prior to the exercising of land use power by local governments).  Specifically, Code Section 36-66-4(a) requires that:

> A local government taking action resulting in a zoning decision shall provide for a hearing on the proposed action.  At least 15 but not more than 45 days prior to the date of the hearing, the local government shall cause to be published within a newspaper of general circulation within the territorial boundaries of the local government a notice of the hearing.  The notice shall state the time, place, and purpose of the hearing.

48.

There can be no doubt that sign restrictions like the City's must be adopted or amended in full compliance with the ZPL.

19

49.

If the ZPL is not strictly followed in conjunction with the passage of a zoning regulation, the code is a nullity.  In passing the ZPL, the General Assembly clearly established the public policy that zoning regulations passed without proper notice or the opportunity for public input are void *ab initio*.

50.

Georgia's courts have held local governments strictly accountable for absolute compliance with all such requirements.

51.

Here, the City failed to comply with these requirements.  Because the applicable regulations are void *ab initio*, the common law rule that property may be used in any lawful manner applies, and Principle is entitled to proceed with its proposed signs.  Indeed, the Georgia Supreme Court has routinely held that if a law restricting the use of property is invalid, then the property owner is free to use the property as he or she wishes.

52.

The failure to comply with the procedural requirements of O.C.G.A. § 36-66-4(a) also constitutes a denial of the Fourteenth Amendment's procedural due process protections and renders the restrictions null, void, and of no force and

effect.   For this reason also, the City was not legally authorized to rely on these regulations to reject Principle's sign applications.

53.

Because no valid regulation prohibited Principle's signs, the use must be permitted.   As such, Plaintiff should be entitled to proceed with the signs and to otherwise be made whole.

## COUNT THREE

## GEORGIA CONSTITUTIONAL VIOLATION

54.

Plaintiff repeats paragraphs 1 through 19 above.

55.

Article I, Section I, Paragraph V of the Constitution of the State of Georgia provides that "no law should be passed to curtail or restrain the freedom of speech . . . ."  The Georgia Supreme Court has recognized that this provision provides even broader protection of speech than the First Amendment.  *E.g.*, Ga. Const., Art. I, § I, ¶ V; *Coffey v. Fayette County*, 279 Ga. 111, 111 (2005) ("*Coffey I*") ("This Court has interpreted the Georgia Constitution to provide even broader protection than the First Amendment"); *Statesboro Publ'g Co. v. City of Sylvania*, 271 Ga. 92, 95 (1999) (requiring city government "to suppress no more speech than is

necessary"); *State v. Miller*, 260 Ga. 669, 671 (1990) ("the 1983 Constitution of Georgia provides even broader protection" than the First Amendment).

56.

Indeed, the most important difference between Georgia and federal law in the realm of free speech is that the Georgia Constitution requires "a government to adopt the least restrictive means of achieving its goals." *Coffey I*, 279 Ga. at 111. As such, the government must "draw its regulations to suppress no more speech than is necessary to achieve [its] goals." *Id.* (citing *Statesboro Publ'g*, 271 Ga. at 95-96). In order to prove that this high threshold has been met, the Georgia Supreme Court requires the government to present evidence supporting its regulations. *Coffey v. Fayette County*, 280 Ga. 656 (2006) ("*Coffey II*"). If such evidence were not required, courts would merely defer to a government's unsubstantiated belief that its restrictions are the least restrictive means of achieving its goals, and "Georgia's additional restrictions on limitations on free speech would be rendered meaningless." Id. at 657-58.

57.

Despite the foregoing requirement, the City did not adopt the "least restrictive means" of achieving its legitimate interests. Instead, as described above,

22

it adopted the most restrictive means possible, by banning all signs not specifically allowed.

58.

Because no valid regulation prohibited Principle's signs, the use must be permitted.   As such, Plaintiff should be entitled to proceed with the signs and to otherwise be made whole.

WHEREFORE, Plaintiff Principle prays that this Court:

(a)   Enjoin the City from further unconstitutional, illegal, and improper conduct, including the enforcement of unconstitutional and illegal regulations as set forth herein;

(b)   Find for Plaintiff as to all claims set forth herein;

(c)   Order that the requested signs be permitted;

(d)   Award Plaintiff actual, presumed, general, and/or nominal damages in an amount to be proven at trial;

(e)   Award all reasonable costs and attorneys' fees incurred by Plaintiff;

(f)   Hold a trial by jury on all matters; and

(g)   For such other and further relief as the Court may deem just and equitable.

DATED this 3rd day of February, 2023.

Respectfully submitted,

BY:   WEBB, KLASE & LEMOND, LLC

 */s/ E. Adam Webb*
E. Adam Webb
  Georgia Bar No. 743910
G. Franklin Lemond, Jr.
  Georgia Bar No. 141315

1900 The Exchange, S.E.
Suite 480
Atlanta, Georgia 30339
(770) 444-9325
(770) 217-9950 (fax)
Adam@WebbLLC.com
Franklin@WebbLLC.com

*Attorneys for Plaintiff*